**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

VINCENTE MIRAMONTED,

      Defendant-Appellee.

No. 03-1199

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 02-CR-544-M)**

James C. Murphy, Assistant United States Attorney (John W. Suthers, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellant.

Matthew C. Golla, Assistant Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Denver, Colorado.

Before **TYMKOVICH,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **PAYNE,** District Judge.[*]

**McWILLIAMS,** Senior Circuit Judge.

---

      [*]Honorable James H. Payne, United States District Court for the Eastern District of Oklahoma, sitting by designation.

In a two-count indictment filed on November 5, 2002, Vincente Miramonted ("the defendant") was charged as follows: (1) Unlawful possession on October 5, 2002, of a firearm, namely an Intratec, model Tec-9, 9mm semi-automatic pistol, after having been previously convicted of a felony, in violation of 18 U.S.C § 922(g)(1); and (2) Unlawful possession on October 5, 2002, of less than five grams of cocaine in violation of 21 U.S.C. § 844(a). On April 4, 2003, the defendant filed a motion to suppress "any and all evidence obtained as a result of Mr. Miramonted's illegal and unlawful detention and arrest on October 5, 2002, and any evidence derived from that arrest, specifically an Intratec, model Tec-9, 9mm semi-automatic pistol seized from a blue Ford-150 parked in the 1300 block of 29th Street in Denver, Colorado." The government filed a response and requested the district court to deny the motion to suppress on the grounds that the police <u>did</u> have probable cause to arrest the defendant, setting forth therein the chronology leading up to the defendant's arrest. In connection with the semi-automatic, the government in its response, stated, *inter alia,* that "Officer Kristy Garcia could see the gun laying on the seat in plain view."

At the hearing on the motion to suppress, the government called one witness, Kristy Garcia, a Denver Police Officer, who was examined and cross-examined at length, without any objection. The defendant called no witness. After a brief colloquy between court and counsel, the district court granted the motion. The government filed a motion for reconsideration. In that motion the government again asserted that "the police had

probable cause to believe that a crime had been committed (i.e., felony menacing . . . .)" In that same motion, the government also stated that, in any event, the seizure of the gun was justified under the doctrine of "motor vehicle exception," citing *Maryland v. Dyson,* 527 U.S. 465 (1999). The motion for reconsideration also stated that at the suppression hearing, "the government tried to explain that ["the motor vehicle exception"] was the government's theory for justifying police action in this case." After a short colloquy between court and counsel, the motion to reconsider was peremptorily denied, with no further hearing. Pursuant to 18 U.S.C. § 3731, the government appeals. We reverse.

In granting the motion to suppress the district court stated that Officer Garcia "was nothing but a spectator" and granted the motion, stating that "you haven't proved anything with this witness, except she saw a gun in a car and got it."

At the outset, we agree with counsel that some, if not much, of Garcia's testimony was based on hearsay. But hearsay testimony is admissible at suppression hearings such as the present one and should be considered by a district court in deciding whether an arrest was based on probable cause. *U.S. v. Matlock,* 415 U.S. 164, 173 (1974) (Rules of evidence applicable in criminal jury trials do not govern at hearings before a judge to determine pre-trial evidentiary matters, such as the admissibility of evidence at trial.) *See also U.S. v. Merritt,* 695 F.2d 1263, 1270 (10th Cir. 1982)(Police should be permitted to offer hearsay as testimony to support reasonable suspicion.) *See* Federal Rules of Evidence 104.

It would appear that the district court in describing Garcia as a "mere spectator" did not consider Garcia's testimony as to the events leading up to the defendant's arrest, much of which was based on hearsay. However, as indicated, hearsay is admissible at a hearing on a motion to suppress and should have been considered by the district court. It is true, as suggested by the district court, that if a Mr. Munoz had, for example, testified, the court might have denied the motion to suppress. But Munoz didn't testify, and the present question is whether Garcia's testimony, standing alone, was sufficient to defeat the defendant's motion to suppress. Viewed in this light, what is a fair assessment of Garcia's testimony at the suppression hearing?

On October 5, 2002, Officer Garcia received a radio call that a Mr. Munoz, bouncer and co-owner of the Mariachi Bar, had reported that a "man with a gun" was in his bar. Garcia, and her fellow officer, Pine, responded to that call. Alighting from their marked vehicle at the entrance to the bar, they were met outside by Munoz. In the ensuing colloquy between Munoz, Garcia and Pine, the police were advised that a person later identified as the defendant, was at that very moment inside the bar. Garcia initially testified at the suppression hearing that prior to the arrest, Munoz had told her that the defendant, on meeting Munoz at the entrance to the bar, was told he could not come in, whereupon the defendant raised his shirt which revealed a weapon, which he then pointed at Munoz, and that the defendant said something like "do we have a problem now." Munoz, in response, indicated it was all right to enter the bar, whereupon the defendant

exited the bar, placed the gun on the seat of his truck, which was parked about 15 feet from the front door of the bar, on a side street, and returned to the bar. On cross-examination, Garcia testified that before the defendant was arrested "the only information that I had was that somebody had pulled a gun on him [Munoz], put a machine gun looking gun in his face, and then put the gun in the car, and that that person was in the bar."

After the initial conversation between Munoz and Garcia outside the bar, Munoz took Garcia and Pine to the parked truck where all three saw the firearm laying on the front seat. At that point, it was decided that Garcia would remain with the truck and "secure" the gun. Pine and Munoz then went inside the bar where the defendant was, and, at some point in time, support help arrived. Officer Garcia conceded that she did not have personal knowledge of what thereafter happened in the bar, but she did state that before the other officers went in the bar, Munoz told the officers "exactly who he was," including the suspect's name and that he was wearing a black trench coat. It was in this general setting that the defendant was placed under arrest and one of the officers searched defendant and found some cocaine on his person. At this point, the officers and defendant then went to the truck, where Garcia had remained, and removed the gun from the vehicle. In this regard, a fellow officer had the keys to the truck and he actually opened the door to the truck and picked up the weapon. Further, Garcia testified that she first saw the defendant when she returned to her patrol car, where other officers had

placed the defendant, and, at the suppression hearing she identified the defendant, as the "suspect" arrested in the bar.

Under these circumstances, we conclude that, on the record before us, members of the Denver Police Department did have "probable cause" to justify defendant's warrantless arrest. In our view, Garcia was not a "mere spectator," but was an active participant in a "team effort" by the Denver Police Department.

Further, under the described circumstances, we see no need to remand for further hearing by the district court on defendant's motion to suppress. On the present record, we conclude that the Denver Police had probable cause to arrest defendant, and that the ensuing search of defendant's person, revealing the presence of cocaine, and his vehicle, revealing the firearm, were incident to that arrest.

In support of our holding, *see, e.g., U.S. v. Merritt,* 695 F.2d 1263 (10th Cir. 1982). In *Merritt*, the judge, as in the instant case, granted the motion to suppress, and in that case, as in the present case, we reversed. In that case we held that at a suppression hearing to determine preliminarily the admissibility of evidence allegedly obtained in violation of a defendant's rights under the Fourth and Fifth Amendments, the judge has "latitude to receive evidence notwithstanding the hearsay rule." *Id.* at 1269. In that same case, we also said that "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest." *Id.* at 1268. We then went on to state, in *Merritt*, that the "excluded evidence, when considered

with the other evidence that was heard by the district court on the reasonable suspicion issue, was sufficient to <u>require</u> the conclusion as a matter of law that the police had reasonable suspicion to make an investigatory stop,"[1] out of which the challenged evidence was obtained. *Id.* at 1270-71 (emphasis added). Here, there was no excluded testimony, and all hangs on Garcia's testimony, which, when considered in its totality, in our view, dictates a finding of probable cause to arrest the defendant, thereby legitimatizing the ensuing arrest and search.

Judgment reversed and cause remanded with directions that the district court vacate its order granting defendant's motion to suppress and enter an order denying defendant's motion to suppress. Further proceedings to be consonant with the views herein expressed.

---

[1] In *Merritt*, the court held that the principle that "probable cause for an arrest may be based on the collective knowledge of the police . . . applies identically where the collective knowledge of the police forms the basis for a stop." *Id.* at 1268, n.9.