**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

──────────

No. 22-1752

──────────

UNITED STATES OF AMERICA

v.

CHRISTOPHER MONTALVO-FLORES,

Appellant

───────────────────────

Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-20-cr-00080-001)
District Judge: Honorable William J. Martini

───────────────────────

Argued June 8, 2023

Before HARDIMAN, AMBRO, and FUENTES,
<u>Circuit Judges</u>

(Opinion filed August 28, 2023)

Louise Arkel **(Argued)**
Saverio A. Viggiano
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

Counsel for Appellant

Mark E. Coyne
Richard J. Ramsay **(Argued)**
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Counsel for Appellee

OPINION OF THE COURT

**AMBRO**, Circuit Judge

Christopher Montalvo-Flores moved to suppress evidence the Government obtained in its search of his girlfriend's rental car. The District Court denied his motion, holding that he failed to show he had a reasonable expectation of privacy in that vehicle. We disagree, as unrebutted evidence shows Montalvo-Flores had possession and control of the car with his girlfriend's permission.

## I.    BACKGROUND

### a. Factual Background

In November 2019, officers swarmed a New Jersey hotel room to execute an arrest warrant for Montalvo-Flores in connection with his suspected involvement in a robbery. After arresting him, officers found car keys during a search incident to arrest. Although Montalvo-Flores exclaimed that those were his car keys, officers knew he did not have a valid driver's license. Upon locating the car in the hotel parking lot, they discovered it was not reported lost or stolen and that its registered owner was the Enterprise Rental Car Company ("Enterprise").

Officers then called Enterprise's regional risk manager to obtain permission to search the car. They told the manager that Montalvo-Flores was operating the vehicle while involved in criminal activity. The Enterprise manager, noting that its rental contract prohibits using the car for criminal purposes and that Montalvo-Flores was not listed on the rental agreement— his girlfriend, Jennifer Pisciotta, was—gave officers her consent to search the vehicle. In that search, officers found 304 grams of cocaine inside the trunk and $35 in the center console. As a result, Montalvo-Flores was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

b. <u>Motion to Suppress Proceeding</u>

Montalvo-Flores moved to suppress the cocaine and cash that officers obtained from the car.[1]  He argued that he, with his girlfriend's permission, lawfully possessed and controlled it.  In response, the Government acknowledged his girlfriend gave him permission to operate it.  A68–69 (agreeing that he was a "driver[] with permission of the lessee to operate the vehicle"); A70 (admitting that he "had permission from his girlfriend, the lessee, to drive the rental vehicle").  But it asserted its warrantless search was nonetheless lawful for other reasons: Montalvo-Flores lacked a legitimate expectation of privacy because he had no driver's license and was not listed on the car's rental agreement, plus it had consent from Enterprise, the car's registered owner, to search the vehicle.  The District Court held a suppression hearing to consider the parties' evidence and arguments.

The evidence elicited at the hearing largely tracked the parties' arguments.  Yet only one witness, Detective Abdullah Holmes, testified.  He acknowledged that Montalvo-Flores' girlfriend rented the car and that Montalvo-Flores possessed its keys.  A151:22–152:3 (explaining that his girlfriend signed the rental agreement); A189:9–11 (he had the car keys).  When officers took the keys from him, he exclaimed that "those are my rent-a-car keys!"  A149:5–12.  And, consistent with the Government's position that Montalvo-Flores had permission to drive the vehicle, Holmes testified that, prior to the search,

---

[1]  He also moved to suppress the evidence that officers seized in the search of his hotel room.  The District Court denied the motion, and he does not appeal that portion of its decision.

4

fellow officers observed Pisciotta giving him the car. A176:25-177:3 (Q. "Prior to that[,] someone had surveilled Ms. Pisciotta and knew that she was in that vehicle and then exchanged it with Mr. Flores. Correct?" A. "Correct."); *see also* A182: 15–21 (reading from a police report stating "Mr. Flores['] girlfriend was observed by Detectives prior to the arrest exchanging/possessing the vehicle with Mr. Flores"). Holmes further submitted that Montalvo-Flores possessed and operated the vehicle. A179:8–12 (Q. "Probably, definitely one of the other members saw him operating the vehicle?" A. "He had possessed the vehicle at one time, yes." Q. "Possessed it or operated? They're two different things." A. "Operated. Possessed."); A180:6–10 ("I assumed that he possessed the vehicle, yes."); A181:10–14 (Holmes stating that "one of the [officers] did see him operate the vehicle"). Also in line with the Government's theory of why its search was valid, Holmes described how an Enterprise agent gave him permission to search the vehicle. He called the agent and "advised her that the person operating the vehicle at the time was . . . arrested for outstanding warrants and was a part of an armored truck robbery, and he did not have a driver's license." A151:8–13. After the agent gave him permission to search the car, officers used the keys to open it and then found the cocaine and cash that Montalvo-Flores moved to suppress.

### c. District Court Opinion

The District Court denied Montalvo-Flores's motion to suppress, holding that he lacked standing because he failed to establish a reasonable expectation of privacy in the car. It stated that, unlike the driver in *Byrd v. United States*, 138 S.

5

Ct. 1518 (2018),[2] Montalvo-Flores "was never observed possessing, operating, or otherwise exercising any sort of control over the rental vehicle aside from possessing the keys thereto." A12. It noted that "[a]lthough Detective Holmes testified that other detectives had apparently seen his girlfriend exchange the car and car keys with [Montalvo-Flores], Detective Holmes was not able to testify as to when or where that observation was made, or if detectives subsequently observed [Montalvo-Flores] operating or exercising control over the vehicle prior to his arrest." *Id.* The Court thus concluded that "there appears to be little evidence" he had "dominion and control" over it. *Id.* In its view, the evidence suggested only that Montalvo-Flores possessed the keys to the car. It thus concluded that "the mere possession of keys to a vehicle is [not] sufficient, standing alone, to create a reasonable expectation of privacy in a vehicle owned by and rented to third parties." A13. It further stated in *dictum* that even if Montalvo-Flores had been seen operating the vehicle with his girlfriend's consent, he still would lack a reasonable expectation of privacy in it because he did not have a driver's license.[3]

---

[2] The Supreme Court in *Byrd* considered whether a driver of a rental car, who was not listed on a rental agreement prohibiting unauthorized drivers from operating it, nonetheless had a reasonable expectation of privacy in the car. The Court unanimously held that a driver's status as an unauthorized driver "will not defeat his or her otherwise reasonable expectation of privacy." *Byrd*, 138 S. Ct. at 1531.

[3] Because the Court held that Montalvo-Flores lacked a Fourth Amendment interest in the vehicle, it did not reach the

6

After a stipulated bench trial, the Court found Montalvo-Flores guilty of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). It sentenced him to 40 months of incarceration to be followed by three years' supervised release. He appeals to us.

## II.  JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review a district court's order denying a motion to suppress under a "mixed standard of review. We review findings of fact for clear error, but exercise plenary review over legal determinations." *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022). "A [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993).

## III.  ANALYSIS

### a.  Did Montalvo-Flores Have a Fourth Amendment Interest in His Girlfriend's Rental Car?

"[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). To decide that issue, we ask first whether

question of whether Enterprise's consent granted officers a lawful basis to search it.

7

Montalvo-Flores "exhibited an actual (subjective) expectation of privacy and, second, [whether his] expectation [was] one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). These two questions reflect the "subjective" and "objective" prongs, respectively, of the Fourth Amendment's "standing" inquiry.[4] *See United States v. Cortez-Dutrieville*, 743 F.3d 881, 884 (3d Cir. 2014). Montalvo-Flores bears the burden of proving each element. *See United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) ("To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure.").

There is no question Montalvo-Flores had a subjective expectation of privacy in the rental car. When officers took the keys from him, he exclaimed "those are my rent-a-car keys!" A149:5–12. And officers needed the keys to open the locked vehicle parked outside his hotel. Thus, Montalvo-Flores no doubt believed he had privacy in the car and took steps to preserve his privacy.

---

[4] "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits." *Byrd*, 138 S. Ct. at 1530. We thus use "standing" to denote an element of the Fourth Amendment claim—that the movant has a reasonable expectation of privacy in the invaded place—though it does not implicate our jurisdiction.

The remaining question, then, is whether his expectation was reasonable. This "is a fact-bound question dependent on the strength of [a defendant's] interest in the car and the nature of his control over it; ownership is not necessary." *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000). Indeed, the Supreme Court held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd*, 138 S. Ct. at 1531. The Court reasoned that "one who . . . lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude." *Id.* at 1528 (quoting *Rakas*, 439 U.S. at 144 n.12).[5]

We note first that Montalvo-Flores had the keys to a car his girlfriend, Pisciotta, rented. She signed the rental agreement and Holmes testified to knowing that "she was [Montalvo-Flores'] girlfriend at the time." A151:22–152:3; *see also* A190:15–17 (Holmes answering "yes, sir" to the question "Enterprise informed you that his girlfriend had rented the vehicle?"). The District Court, however, only acknowledged that "[Montalvo-Flores] *states* that Pisciotta was his girlfriend at the time," and thus it backed away from

---

[5] The Supreme Court in *Byrd* remanded for inquiries into (1) whether Byrd had his girlfriend act as a formal go-between in renting the vehicle for him, and (2) whether that would render his expectation of privacy illegitimate. *Byrd*, 138 S. Ct. at 1529–30. The Government does not allege that Montalvo-Flores's girlfriend fraudulently rented the car for him, and thus we do not have occasion to consider these questions raised in *Byrd*.

9

the uncontested and established fact that she was his girlfriend. A9 (emphasis added).

That Montalvo-Flores had his girlfriend's keys matters. To repeat, our inquiry is focused "on the strength of his interest in the car and the nature of his control over it." *Baker*, 221 F.3d at 442. Possessing his girlfriend's keys, not a stranger's, suggests Montalvo-Flores lawfully possessed the car. Consider another *United States v. Baker*, this time in the Ninth Circuit, where officers took car keys hanging from Baker's belt loop, searched the car, and found evidence in it. 58 F.4th 1109 (9th Cir. 2023). When Baker moved to suppress that evidence, the Government asserted he lacked standing to do so because he did not assert a possessory or ownership interest in the car or its key. *Id.* at 1118 & n.2. But the Court observed that the car belonged to Baker's mother. Thus, he had a legitimate privacy interest in the car and the keys, rejecting the Government's argument that he "could have taken [them] without his mother's permission." *Id.*

Much like the Ninth Circuit recognized that a son is unlikely to be driving his mother's car without her permission, Montalvo-Flores was equally unlikely not to have had Pisciotta's permission to drive her rental car. Indeed, the evidence confirms this commonsense inference in our case. Prior to Montalvo-Flores's arrest, officers saw Pisciotta exchange the vehicle with him. A176:25–177:3 (agreeing "that someone had surveilled Ms. Pisciotta and knew that she was in that vehicle and then exchanged it with [Montalvo-Flores]"). Though the dissent states Holmes equivocated on this point, it cites no testimony in support. That is because Holmes maintained throughout his testimony that officers saw Pisciotta exchange the vehicle with Montalvo-Flores. But

10

when Montalvo-Flores' counsel asked Holmes whether a *specific* officer witnessed Pisciotta giving Montalvo-Flores the car, he answered "I can't answer what another person [saw], to be honest." A163:1–5. In short, Holmes' testimony that one of his fellow officers saw Pisciotta exchange the car with Montalvo-Flores stands unrebutted and directly supports the notion that Montalvo-Flores had "lawful possession and control" of it. *Byrd*, 138 S. Ct. at 1524.

Beyond just having the car nearby and the keys to it, Montalvo-Flores possessed and controlled it. Holmes testified that he remembers a fellow detective saying that Montalvo-Flores possessed the car, so when Holmes took the keys from him, he "assume[d] that [Montalvo-Flores] possessed the vehicle." A180:6–10. Further, Enterprise's agent based her consent to search the car in part on her view that Montalvo-Flores "shouldn't have possessed [it] because he didn't sign the rental agreement." A180:24–181:9. And the car, which was parked outside his hotel room, was not reported lost or stolen. The record evidence thus points in one direction: Montalvo-Flores had "dominion and control" over the car with his girlfriend's permission. *Byrd*, 138 S. Ct. at 1528 (quoting *Rakas*, 439 U.S. at 149).

So how did the District Court come to find that Montalvo-Flores "was never observed possessing, operating, or otherwise exercising any sort of control over the rental vehicle aside from possessing the keys thereto?" A12. It noted Holmes "was not able to testify as to when or where that observation was made, or if detectives subsequently observed [Montalvo-Flores] operating or exercising control over the vehicle prior to his arrest." A12. But that is immaterial, as Holmes maintained throughout his testimony that

11

Montalvo-Flores possessed and controlled the car, apparently with his girlfriend's permission. That, to reemphasize, was something the Government agreed with in its briefing to the District Court.[6] Though Holmes was at times relaying what other officers saw and told him, "hearsay testimony is admissible at suppression hearings . . . and should be considered by a district court" if reliable. *United States v. Miramonted*, 365 F.3d 902, 904 (10th Cir. 2004) (citing *United States v. Matlock*, 415 U.S. 164, 173 (1974)). Here, Holmes obtained Enterprise's consent to search the car by telling its manager that Montalvo-Flores operated it, and later wrote a police report stating that Pisciotta gave the vehicle to Montalvo-Flores.[7] Further, it is inconceivable that Holmes would concoct testimony favorable to Montalvo-Flores. "Under [these] circumstances there was no apparent reason for the judge to distrust" Holmes' insistent and unrebutted testimony that Montalvo-Flores possessed and controlled the

---

[6] The Government's position in its District Court briefing is useful for understanding the testimony there. That the Government twice stated that Montalvo-Flores had permission to operate the vehicle—clearly and directly, not in passing—is useful to understand why Holmes testified to that effect and why Montalvo-Flores did not call witnesses to confirm the then-uncontroverted fact that he had permission to possess and operate the vehicle. A68–69, A70.

[7] As the dissent notes, no party introduced the police report into evidence. But throughout the suppression hearing Holmes testified to its existence and content. We thus rely on his testimony, not the police report itself, as evidence.

car. *Matlock*, 415 U.S. at 176. Thus, the District Court clearly erred in finding otherwise.

The dissent casts Holmes' testimony on these points as "inconsistent" and "equivocal." However, the exchanges it cites for those propositions do not cause such doubt in his testimony. When Montalvo-Flores' counsel asked Holmes if there was anything in his police report "to indicate that anyone else observed [Montalvo-Flores] step foot in" the car, Holmes replied "[o]nly just that someone [had] possibly seen [Montalvo-Flores]" in it. A163:10–12. Critically, Holmes was testifying about what he wrote in his police report.[8] As explained above, whenever Montalvo-Flores's counsel asked Holmes whether Montalvo-Flores possessed and controlled the car (not what the police report said), Holmes remained steadfast that Montalvo-Flores did both. Curiously, the dissent attempts to poke a hole here by pointing out that when Montalvo-Flores' counsel asked Holmes whether Montalvo-Flores possessed or operated the car, noting "[t]hey're two different things," Holmes answered "Operated. Possessed." A179:8–12. This testimony reveals no wavering, but instead Holmes' continued assertion that Montalvo-Holmes both possessed and operated the car.[9] As

---

[8] Holmes misremembered the report. It only states, in relevant part, that "Mr. Flores['] girlfriend [] was observed by Detectives prior to the arrest exchanging/possessing the vehicle with Mr. Flores." A182:15–21 (excerpt of report being read on the record).

[9] The dissent cites, in support of its position, Montalvo-Flores' counsel's misstatement at oral argument that the record suggests Montalvo-Flores neither operated nor

13

the dissent points out, the District Court observed Holmes' tone and demeanor, and we did not have the benefit of doing so. That would matter were there conflicting evidence from which to choose. But here the evidence points one way only, and the Court went against it.

True, Montalvo-Flores did not introduce independent evidence at the suppression hearing. Instead, he relied on his attorney's cross-examination of the Government's witness. That was a daring strategy, because the Government could have chosen not to put on any witness, which would have left Montalvo-Flores insufficient evidence to support his assertion that he had a Fourth Amendment interest in the vehicle. But Holmes testified, and his testimony strongly supported that Montalvo-Flores possessed and controlled the car with his girlfriend's permission. He therefore had a cognizable Fourth Amendment interest in it.[10]   *See Baker*, 221 F.3d at 443

occupied the car. However, it also notes that Montalvo-Flores' counsel later backtracked. And more importantly, a counsel's argument is not evidence. If it were, we would make much of the Government's concessions, also at oral argument, that officers observed both Pisciotta giving the keys and car to Montalvo-Flores, and his later driving it.

[10]    That Montalvo-Flores had no valid driver's license does not change this result. Although the District Court found (incorrectly) that he never possessed or operated the car, it went on to opine that, even if he had, he would still lack Fourth Amendment standing because he had no driver's license.

But New Jersey law only prohibits unlicensed drivers from driving cars. N.J.S.A. § 39:3–10. It does not bar them

14

(reasonable expectation of privacy for driver "when there is clear evidence of continuing possession and control, as well as no evidence that the driver obtained the car illegitimately"); *United States v. Garcia*, 897 F.2d 1413, 1418 (7th Cir. 1990) ("If an individual has the owner's permission to use property, society surely recognizes this as reasonable."); *United States v. Rubio-Rivera*, 917 F.2d 1271, 1275 (10th Cir. 1990) ("Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge [its] search.").

\* \* \* \* \*

from exercising dominion and control over a parked car. Because Montalvo-Flores had possession and control over a parked car at the time of the search, he was not obligated to have a driver's license. Thus, we reject the District Court's alternative holding that Montalvo-Flores' not having a driver's license deprives him of a reasonable expectation of privacy in the vehicle, though we do not weigh in on the question splitting our sister circuits: whether an unlicensed *driver* has a reasonable expectation of privacy in a rental car? *Compare United States v. Bettis*, 946 F.3d 1024, 1029 (8th Cir. 2020) (holding that "an unauthorized and unlicensed driver may challenge a search of a rental car operated with the renter's permission"), *and United States v. Cohen*, 38 F.4th 1364, 1369–70 (11th Cir. 2022) (same), *with United States v. Lyle*, 919 F.3d 716, 729–30 (2d Cir. 2019) (holding defendant "lacked standing not just because he was an unauthorized driver [of a rental car], but because he was an unlicensed one").

15

Much came out at Montalvo-Flores's hearing to suppress evidence obtained from the car rented by Pisciotta: she was his girlfriend; she gave the car's keys to him; he possessed the keys when arrested; the car was parked outside his hotel room; it was locked; and he was observed by police possessing and operating it. This context strongly suggests that Montalvo-Flores had dominion and control of the car with his girlfriend's permission. To conclude, as did the District Court, that he "was never observed possessing, operating, or otherwise exercising any sort of control over the rental vehicle," A12, was clear error. The legal conclusion from the facts noted above is that Montalvo-Flores had a reasonable expectation of privacy in the car and thus may challenge the evidence taken from it without a warrant.

Because Montalvo-Flores had a reasonable expectation of privacy in the car, the Government must justify its warrantless search. However, after concluding he lacked standing, the District Court did not analyze whether the Government's search was valid. "We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance." *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010). We follow that path here and vacate the denial of Montalvo-Flores's motion to suppress evidence of the drugs found in the leased vehicle. As that evidence was the basis for the judgment of conviction, it too is vacated, and the case remanded for further proceedings.

*United States v. Christopher Montalvo-Flores*, No. 22-1752
_____

HARDIMAN, *Circuit Judge*, dissenting.

Christopher Montalvo-Flores appeals the District Court's order denying his motion to suppress evidence seized during the search of his girlfriend's rental car. I would hold that the District Court's factual findings were not clearly erroneous and that Montalvo-Flores failed to carry his burden to prove he had a reasonable expectation of privacy in the searched car. Because I would affirm the order denying his motion to suppress on Fourth Amendment standing grounds, I respectfully dissent.

I

Montalvo-Flores had to show "that he had a reasonable expectation of privacy in the property searched." *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014); *see Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). Sometimes that burden of proof to show Fourth Amendment standing is easily carried. For example, because the "reasonable-expectations test has been added to, not substituted for, the traditional property-based understanding of the Fourth Amendment," *Florida v. Jardines*, 569 U.S. 1, 11 (2013) (cleaned up), evidence that one is the owner or lessee of the searched home or car is often enough to shift the burden to the Government to justify a warrantless search, *see United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018). But here, Montalvo-Flores neither owned nor leased the rental car.

1

Yet Montalvo-Flores's lack of a common-law property interest in the car was not fatal to his suppression motion. In *Byrd v. United States*, the Supreme Court held that "as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." 138 S. Ct. 1518, 1524 (2018). An expectation of privacy—though not necessarily a reasonable one—comes from the "complete dominion and control over" the car and the ability to "exclude others from it." *Id.* at 1528 (quoting *Rakas v. Illinois*, 439 U.S. 128, 149 (1978)). But for Fourth Amendment standing to exist, that control must be lawful—a car thief, for example, has no *reasonable* expectation of privacy in his plunder. *Id.* at 1529; *see also United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000), as amended (Sept. 21, 2000) ("[W]e have previously suggested that a defendant who had stolen a car and used it in a robbery would not have standing to object to a search of the car.").

Montalvo-Flores thus had to prove that he had complete and lawful dominion and control over the car. *See Burnett*, 773 F.3d at 131. His possession of the keys reflects dominion and control. The keys would allow Montalvo-Flores to "exclude others" from the car by locking the doors. *See Byrd*, 138 S. Ct. at 1528 (quoting *Rakas*, 439 U.S. at 149). But even assuming this evidence established Montalvo-Flores's dominion and control of the car, he still had to prove that his possession was *lawful*. Without a property interest in the car, Montalvo-Flores could not lawfully possess the car unless he had permission to do so from the owner or lessee. Otherwise, Montalvo-Flores's expectation of privacy in the car would be analogous to that of a car thief. For example, in *Jones v. United States*, the Supreme Court concluded a house guest had a reasonable expectation of

2

privacy in the premises when the tenant "had given [the house guest] the use of it, and a key." 362 U.S. 257, 259, 265 (1960); *see also Byrd*, 138 S. Ct. at 1528 (relying on *Jones*).

Because it is undisputed that Montalvo-Flores did not have permission from Enterprise to use the car, any permission must have come from the lessee, his girlfriend Jennifer Pisciotta. The most obvious way to prove such permission would have been to elicit testimony from either Montalvo-Flores or Pisciotta that she let Montalvo-Flores possess the keys and the car. He did not call either as a witness, and the District Court concluded the evidence that was introduced failed to carry Montalvo-Flores's burden. This was not clearly erroneous.

## II

The evidence at the suppression hearing—consisting of testimony from a single witness, one of the arresting officers, Detective Abdullah Holmes, [1]—did not carry Montalvo-Flores's burden of proof to show he had permission to possess and control the car given the District Court's non-clearly erroneous factual findings. *See United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (applying clear-error review to factual findings underlying a decision on a motion to suppress).

---

[1] Montalvo-Flores also attached Holmes's police report to his suppression motion, but neither party introduced it as evidence at the hearing. As the majority notes, we cannot rely on the report except to the extent that Holmes's testimony discussed it. Maj. Op. 12 n.7. Yet the majority later tries to sidestep that restriction, citing *counsel* purporting to read from the report to discount Holmes's testimony highlighted in this dissent as having "misremembered the report." Maj. Op. 13 n.8.

3

"Fourth Amendment standing is a fact-bound question dependent on the strength of [Montalvo-Flores's] interest in the car and the nature of his control over it." *Baker*, 221 F.3d at 442. And we can disrupt the District Court's factual findings only if they are "completely devoid of minimum evidentiary support displaying some hue of credibility" or lack any "rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citation omitted). The majority errs by failing to properly account for Montalvo-Flores's burden of proof and the deference due to the District Court's factfinding.

A

The majority suggests that the Government may have conceded or forfeited its argument that Montalvo-Flores did not have permission to possess or control the car. The Government focused its arguments to the District Court on other theories for why Montalvo-Flores lacked standing to challenge the search, and in doing so made passing references to his purported permission to possess the car. App. 69, 70. But the District Court did not treat these brief statements as a concession that absolved Montalvo-Flores of his burden of proof. Neither does Montalvo-Flores, who does not mention the Government's purported concession in his appellate briefing. He thus forfeited any argument relying on the Government's statements to the District Court. *See Altice USA, Inc. v. N.J. Bd. of Pub. Utilities*, 26 F.4th 571, 575 n.2 (3d Cir. 2022) (noting a party can "forfeit[] its forfeiture argument" by failing to raise it with specificity). So like the parties and the majority, I turn to the evidence introduced at the hearing and on which the District Court based its factual findings.

4

B

To establish Montalvo-Flores had permission to possess the car and the keys, the majority relies heavily on evidence that an officer purportedly witnessed Pisciotta exchange the car with Montalvo-Flores and observed Montalvo-Flores operate the vehicle. Holmes at one point testified that "[o]ne of the other members did see [Montalvo-Flores] operate the vehicle." App. 181; *see also* App. 183 ("[T]his report reflects my memory that one of the detectives did say that he did possess the vehicle."). But unlike the majority, I don't see the record as "point[ing] in one direction" on this factual question. Maj. Op. 11. Instead, Holmes equivocated as to whether anyone saw Pisciotta exchange the keys with Montalvo-Flores, or saw Montalvo-Flores ever step foot in (let alone drive) the car. Holmes made clear *he* never saw Montalvo-Flores in the vehicle. As for his fellow officers, counsel asked Holmes: "And there's nothing in your report to indicate that anyone else observed him step foot in [the rental car]. Correct?" App. 163. Holmes responded "[o]nly that someone *possibly* [saw] him, yes." *Id.* (emphasis added).[2] And even in the testimony relied

---

[2] The majority criticizes this analysis for relying on Holmes's testimony "about what he wrote in his police report." Maj. Op. 13. But much of Holmes's testimony relied on by the majority also focused on his report. *See, e.g.*, Maj. Op. 5 (citing testimony reading from the report); Maj. Op. 13 n.8 (relying on the report directly). Similarly, the majority says this testimony was about whether "a *specific* officer witnessed Pisciotta giving Montalvo-Flores the car." Maj. Op. 11. Holmes testified here about "the officer who allegedly surveilled" Montalvo-Flores. App. 163. But all the testimony about whether another officer saw Montalvo-Flores operate the car or exchange the

5

on by the majority, Holmes struggled to articulate what *other* officers may have seen, vacillating between whether they witnessed Montalvo-Flores "exchange," "possess," or "operate" the car. *See* Maj. Op. 5 (citing App. 176–77 ("exchanged"), App. 179 (Q. "Probably, definitely one of the other members saw him operating the vehicle?" A. "He had possessed the vehicle at one time, yes." Q. "Possessed it or operated? They're two different things." A. "Operated. Possessed.")).

What was the District Court to make of this inconsistent and equivocal testimony from a single witness who testified only to what *others* said they saw? The District Court acknowledged Holmes's testimony, noted some holes in it, and then made a factual finding: "[Montalvo-Flores] was never observed possessing, operating, or otherwise exercising any sort of control over the rental vehicle aside from possessing the keys thereto." *United States v. Montalvo-Flores*, 2021 WL 1573842, at \*4 (D.N.J. Apr. 22, 2021). That factual finding is not clearly erroneous on this record.

The majority, based on limited hearsay evidence, concludes otherwise. True, "[a]t a suppression hearing, the court *may* rely on hearsay." *United States v. Raddatz*, 447 U.S. 667, 679 (1980) (emphasis added). But as the majority admits, a court should do so only if the hearsay testimony is "reliable."

---

keys to it was about the officer or officers that had surveilled him. *See, e.g.*, App. 176–77 (Q. "Prior to that[,] someone had surveilled Ms. Pisciotta and knew that she was in that vehicle and then exchanged it with Mr. Flores. Correct?" A. "Correct."). There is no suggestion that an officer saw Montalvo-Flores and the car by chance, rather than during surveillance.

Maj. Op. 12. The District Court found the hearsay unreliable because Holmes could not recall basic details about it—such as who told him they saw Montalvo-Flores operate the vehicle, or where or when they made that observation. And the District Court observed Holmes's tone and demeanor when he testified that he never saw Montalvo-Flores occupy the car and that it was only "possibl[e]" that a fellow officer had seen as much, App. 163, and when he later stated another officer had seen Montalvo-Flores drive the car. The District Court was thus in the best position to resolve any discrepancy in the testimony and judge the reliability of the hearsay. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). We must defer to the District Court's evaluation.[3] In support of its position that another officer saw Montalvo-Flores drive the car, the majority also

---

[3] The majority faults the District Court for not crediting the hearsay because "it is inconceivable that Holmes would concoct testimony favorable to Montalvo-Flores." Maj. Op. 12. But when evaluating the reliability of hearsay, a judge must consider both the reliability of the testifying witness and the reliability of the hearsay witness—here, the other officer who purportedly said he saw Montalvo-Flores drive the car. The majority fails to account for this second level of reliability. Moreover, Holmes's testimony on this point is not strictly "favorable to Montalvo-Flores." Id. Though it may have helped Montalvo-Flores on the issue of Fourth Amendment standing, tying him to the car would have supported the Government on other fronts—such as justifying the search based on Enterprise's consent, as an automobile search, or as a search incident to arrest.

7

states that "Holmes obtained Enterprise's consent to search the car by telling its manager that Montalvo-Flores operated it." Maj. Op. 12. Again, Holmes equivocated on this point. At first he testified that "[w]e advised [Enterprise] that the person *operating the vehicle* at the time . . . was arrested for outstanding warrants." App. 151 (emphasis added). But later Holmes testified that "we told [Enterprise] that he *possessed the keys* and he had the keys to that vehicle." App. 177 (emphasis added); *see also* App. 180 (Q. "Did you inform Enterprise that he had not operated the vehicle?" A. "I informed Enterprise that he was *possessing their keys*." (emphasis added)). And even looking to Holmes's first statement, we know it is not true that Montalvo-Flores was "operating the vehicle at the time" of his arrest, App. 151, when Holmes called Enterprise. Instead, Montalvo-Flores was in his hotel room. So this evidence does not tip the scales in his favor.

Because the District Court's factual conclusion that no officer observed Montalvo-Flores enter or possess the vehicle is neither "completely devoid of minimum evidentiary support displaying some hue of credibility" nor without any "rational relationship to the supportive evidentiary data," it is not clearly erroneous. *DiFederico*, 201 F.3d at 208. In fact, Montalvo-Flores's counsel conceded at oral argument that "[t]here is nothing in the record that indicates . . . that [Montalvo-Flores] operated or even occupied . . . the car." Oral Arg. Transcript (ECF 55) at 9:13–15. Counsel backtracked to some extent on rebuttal but still argued that the more consistent testimony was that Montalvo-Flores never operated Pisciotta's rental car. *Id.* at 27:24–28:23. Yet the majority goes out of its way to find the District Court's factual finding clearly erroneous.

## C

Stripped of evidence that Montalvo-Flores had driven or occupied the vehicle, he and the majority are able to point to little additional evidence indicating he had permission to possess the car.

First, Montalvo-Flores possessed the keys. As noted above, possession suggests dominion or control over the car but sheds no light on whether he had *lawful* possession.

Second, police found the car locked and outside the hotel where Montalvo-Flores was arrested. Like possession of the keys, this fact suggests at most that Montalvo-Flores had possession and control of the car—not that his possession was permitted and lawful. That the car was not reported lost or stolen, does not change this analysis. Though we know Pisciotta was not in the hotel room at the time of Montalvo-Flores's arrest, the record is otherwise silent about her whereabouts, so she could have been nearby without knowing that Montalvo-Flores had the keys. And even if he took them without her permission and she was aware, she may have opted to not report her boyfriend for taking the car.

Third, Montalvo-Flores exclaimed "[t]hose are my car keys" when the police found them. App. 149. Simply asserting that the keys or the car were his did not make it so. Though this evidence may help show that Montalvo-Flores "demonstrated a subjective expectation of privacy in the subject of the search," it does nothing to render his expectation "objectively reasonable," as necessary to establish Fourth Amendment standing. *United States v. Cortez-Dutrieville*, 743 F.3d 881, 884 (3d Cir. 2014). The majority agrees.

9

Fourth, Montalvo-Flores's girlfriend rented the car. But that relationship does not require that she permitted him to use the car. It's plausible that Pisciotta gave Montalvo-Flores the keys and full use of the car. But it's equally plausible that Pisciotta was aware of her boyfriend's illicit activities and, hoping to avoid implicating herself, prohibited Montalvo-Flores from using the car. It's also plausible that she was not willing to share her rental car with an unauthorized and unlicensed driver, and that Montalvo-Flores grabbed the keys when the police arrived. We simply don't know because Montalvo-Flores called no witnesses, despite his burden of proof. *See Burnett*, 773 F.3d at 131. While permission to drive the car may be one "commonsense inference," Maj. Op. 10, we could draw from Montalvo-Flores's relationship to the lessee, it's neither the only reasonable inference that could be drawn nor the one the District Court drew. And Montalvo-Flores is not entitled to have the District Court or our Court draw reasonable inferences in his favor at the suppression stage. *Cf. Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011) (requiring reasonable inferences to be drawn in favor of the non-moving party at summary judgment, because—unlike on a suppression motion—the court does not resolve factual disputes at that stage). To the contrary, on appeal from an order denying a suppression motion we generally must "construe the record in the light most favorable to the government." *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012).

The majority relies on a Ninth Circuit case to accord substantial weight to Montalvo-Flores's relationship to Pisciotta. Maj. Op. 10 (citing *United States v. Baker*, 58 F.4th 1109 (9th Cir. 2023)). But *Baker* is as unconvincing as it is non-binding. For one, it addressed whether the defendant has a reasonable expectation in a *car key* seized from his person, not

10

the car itself. *Id.* at 1118. For another, the case primarily addressed whether Baker abandoned the key by disclaiming ownership of any car. *See id.* The language today's majority quotes about Baker potentially taking the key without permission was buried in a footnote and lacked analysis or citation to authority. *Id.* at 1118 n.2. Finally, as the majority recognizes, the reasonable expectation of privacy inquiry is a "fact-bound question." Maj. Op. 9 (quoting *Baker*, 221 F.3d at 442). Because the footnote from the Ninth Circuit case is so brief, we do not know what evidence about Baker's relationship with his mother supported an inference that he had permission to drive her car. Here, Montalvo-Flores introduced no evidence about his relationship to Pisciotta other than that she was his "girlfriend"—a title that could encompass a range of relationships.

Looking at this evidence, perhaps the District Court exaggerated when describing this case as about "the *mere* possession of keys." *Montalvo-Flores*, 2021 WL 1573842, at *4 (emphasis added). But considering the District Court's factual finding that nobody saw Montalvo-Flores occupy the car, this case is *mostly* about the possession of keys. The other facts and circumstantial evidence add little to show that Montalvo-Flores had permission to use Pisciotta's rental car. I would find this evidence insufficient to prove such permission.

\* \* \*

In sum, I would hold that the District Court did not clearly err in its factual findings and that Montalvo-Flores failed to prove that he had permission to use the rental car. He thus did not show that he had *lawful* possession of and control over the car, as necessary to establish a reasonable expectation of privacy in it. For those reasons, we should affirm both the

11

District Court's order denying the motion to suppress and its judgment of conviction. With respect, I dissent.