**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1434
_____

UNITED STATES OF AMERICA

v.

JAMAL JOHNSON
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cr-00645-001)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 23, 2024

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Filed: October 17, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Jamal Johnson was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the District Court erred in denying his motion to suppress a gun and ammunition obtained from a warrantless search of his girlfriend's home and statements made after his arrest. Discerning no error, we will affirm.

## I.    DISCUSSION[1]

On the denial of a motion to suppress, "we view the facts in the light most favorable to the Government," *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020), and review factual findings for clear error, *United States v. Pavulak*, 700 F.3d 651, 660 (3d Cir. 2012). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985). Here, Johnson contends that the District Court erred in resolving two factual disputes against him: first, whether the officers conducted the initial sweep of his girlfriend's home without her consent, and second, whether they found the gun in plain view in the bedroom closet. We address these in order.

### A. Consent to Search

Johnson argues that the initial sweep that led to the discovery of the gun was invalid because his girlfriend, Arianna Rodriguez, did not verbally consent. The District Court

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

"credit[ed] Officer Pompeo's testimony," finding that Ms. Rodriguez verbally agreed to let officers into her apartment, stepped to the side to provide them with access and seemed calm in her demeanor. *United States v. Johnson*, No. CR 19-645-SRC-1, 2020 WL 2611596, at *8 (D.N.J. May 22, 2020). But "[d]etermining the credibility of witnesses is uniquely within the province of the trial court." *United States v. Bethancourt*, 65 F.3d 1074, 1081 n.4 (3d Cir. 1995). Accordingly, "when [factual findings] are predicated on credibility determinations" we "ordinarily defer to [the] trial court." *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010).

Johnson points to other details that he alleges render the government's account implausible. But the District Court was unmoved by the discrepancy between two copies of the consent to search form, one of which indicates that the second search took place at 8:25 a.m. and the other of which is marked at 5:25 a.m. As government witnesses testified, what appeared as "5:25 a.m." was simply the incomplete transfer of the handwritten "8:30 a.m." from the original top sheet to the carbon copy below and, at 5:30 a.m., two of the officers who participated in that search were either asleep or preparing to execute the warrant. Nor did the District Court find it incredible that approximately two hours elapsed between the initial discovery of the gun in the first search and the second search at 8:25 a.m., given the testimony that investigators from a separate task force were dispatched to handle the gun investigation, and that the Fugitive Task Force, which originally executed the warrant, had to wait for them to arrive. The District Court also declined to attach significance to the fact that Johnson was not associated with Ms. Rodriguez's address in the Thomson Reuters database where Officer Pompeo allegedly found it perhaps because

3

Pompeo also testified that he checked several databases, and may have misidentified the specific source. The District Court did not clearly err in accepting the government's explanations for these discrepancies and ultimately finding that the initial search, in which the gun was found, was consensual.

**B. Plain View**

Next, Johnson challenges the District Court's decision to credit Officer Pompeo's testimony that the gun was found in plain view in the closet over the testimony of Johnson that it was hidden there, wrapped in a gray blanket. Again, however, we cannot say the District Court's determination was clearly erroneous.[2]

To the contrary, it has substantial support in the record. According to the testimony of Officer Pompeo, credited by the District Court, after Officer Savick "called out to him," Pompeo himself entered the bedroom and saw the gun in plain view in the closet with no blanket nearby. App. 126. Detective Durning also testified that, when he arrived at Ms. Rodriguez's apartment two hours later, he too saw the gun in the same position. When asked if the gun was "wrapped up in any way," he said "[n]o." App. 133. No one mentioned to either officer that it had ever been wrapped up. App. 133.

---

[2] To be sure, Officer Savnick, who actually found the gun, did not testify directly. But consistent with the Supreme Court's decision in *United States v. Raddatz*, 447 U.S. 667 (1980), we have held that district courts may consider an officer's hearsay testimony "relaying what other officers saw and told him" because "hearsay testimony is admissible at suppression hearings . . . and should be considered by a district court *if reliable*." *United States. v. Montalvo-Flores*, 81 F.4th 339, 344 (3d Cir. 2023) (emphasis added) (internal quotation marks omitted); *see also Raddatz*, 447 U.S. at 679 ("[a]t a suppression hearing, the court may rely on hearsay and other evidence" not admissible at trial).

Detective Durning's description of the role of the officers in the initial sweep likewise supported the inference that Officer Savnick merely saw the gun in plain view and did not move it: Those officers, he explained, were part of the Fugitive Task Force, which "look[s] for fugitives or wanted people" and "do[es]n't conduct [firearms] investigations," so they typically would call in investigators as soon as they saw a firearm, as the District Court found they did here. App. 139.

On the other hand, the District Court had affirmative reasons to disbelieve Johnson and his girlfriend. Johnson asserted that the gun was wrapped in a "gray blanket" in the closet, App. 195, while Ms. Rodriguez insisted that she saw the gun lying on the bed on top of a green blanket. Ms. Rodriguez also had motives to lie because she wanted to protect Johnson and, as defense counsel explained, she was concerned about her own criminal exposure for constructive possession. Considering this contradictory evidence alongside the government's, the District Court did not clearly err in finding that the gun was discovered in plain view during a legitimate search and that the gun and statements resulting from its discovery should not be suppressed.

## II. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.