**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1154
_____

UNITED STATES OF AMERICA

v.

RYAN MENDOZA,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2:21-cr-00503-001)
District Judge:  Honorable Arthur J. Schwab

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 13, 2025

Before: RESTREPO, McKEE, and AMBRO, *Circuit Judges*

(Opinion filed: January 8, 2026)

Ryan R. Smith
Suite 820
310 Grant Street
Pittsburgh, PA 15219

*Counsel for Appellant*

Adam N. Hallowell
Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee*

---

OPINION OF THE COURT

---

AMBRO, *Circuit Judge*

Ryan Mendoza moved to suppress evidence the Government obtained in its search of his hotel room after checkout time. The District Court denied his motion, holding that he failed to show he had a reasonable expectation of privacy in that hotel room. We agree. Five hours after checkout time, any expectation of privacy Mendoza had was not objectively reasonable.

## I.   BACKGROUND

Around 1:00 a.m. on February 24, 2021, Ryan Mendoza checked into a Pittsburgh hotel for a two-night stay—the night spanning February 23 to 24 and the night spanning February 24 to 25.  He obtained a receipt stating that his departure date was February 25.  On the back of each guest room door, and usually on a plaque behind the front desk, the hotel posted signs stating that checkout time was noon.  The hotel usually set guests' key cards to deactivate two hours after checkout time.

The hotel permitted guests to check out either by going to the front desk or simply by walking out of the hotel without notifying anyone.  By noon on February 25, Mendoza had not gone to the front desk to check out.  So the hotel's system added him to a "due-out" list.  Hotel staff check rooms on the list to ensure they have been vacated.  When the hotel manager checked Mendoza's room around 2:00 p.m., he saw a number of personal items but no luggage.  He marked the room as a checkout, but found the situation odd.  A few hours later, the manager returned for another check and discovered a backpack containing wrapped packages of white powder.  He told a staff member to call the police.

They arrived around 5:20 p.m.  Hotel staff informed the officers that they had found a bag containing drugs in the room of a "walk-out" guest whose stay had ended at noon that day.  Police entered the hotel room without a warrant, accompanied by the hotel manager.  In the room, the officers "double-check[ed]" with the manager that the guest had "checked out."  Supp. App. 4, at 8:35–8:50.  The manager appeared to understand the question as asking whether the guest physically checked out at the front desk, so the officer sought to clarify that the room was "vacant," the guest "ha[d] nothing to do with

3

this room anymore," possession of the room had reverted to the hotel, and the guest would not be allowed back in if he tried to return. *Id.*, at 8:50–9:35. The manager confirmed this understanding. The police also asked the manager to alert them if the guest returned.

Around 10:00 p.m., Mendoza returned to the hotel. He was arrested with room keycards and the receipt in his pocket.

Mendoza moved to suppress the fruits of the hotel room search under the Fourth Amendment, arguing he had not vacated the room when the police searched it warrantlessly. At the suppression hearing, the hotel manager testified that guests could check out either by going to the front desk or by walking out. After the designated checkout time, walk-out guests' balances are charged to their credit cards on file, their room keys are deactivated, and their rooms are considered vacant.

The District Court denied Mendoza's motion. He appeals.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. "We review a district court's order denying a motion to suppress under a mixed standard of review. We review findings of fact for clear error, but exercise plenary review over legal determinations." *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022) (citation omitted). And "[b]ecause the District Court denied the suppression motion, we view the facts in the light most favorable to the Government." *Id.* (quoting *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020)).

4

## III.   ANALYSIS

As an initial step in determining whether a search violated the Fourth Amendment, we ask whether the person claiming its protection had "a legitimate expectation of privacy in the invaded place." *United States v. Montalvo-Flores*, 81 F.4th 339, 342 (3d Cir. 2023) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  This inquiry involves a "subjective" prong—whether the defendant actually expected privacy in that place—and an "objective" prong—whether any such expectation was one that society is prepared to recognize as reasonable.[1]  *Id.* (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).  Mendoza "bears the burden of proving each element."  *Id.* at 343.  If he fails his objective burden, he cannot claim Fourth Amendment relief even if he did have a subjective expectation of privacy.

Under the Fourth Amendment, a hotel guest's privacy interest in a hotel room is the same as that of a tenant in a rented house.  *Stoner v. California*, 376 U.S. 483, 490 (1964).  But that interest dissipates when the guest vacates the room.  *Abel v. United States*, 362 U.S. 217, 241 (1960).  "The hotel then ha[s] the exclusive right to its possession," and hotel management may consent to a search.  *Id.*

There is no precedential authority in our Circuit governing whether hotel guests maintain an objectively

---

[1] Courts often refer to this doctrine as a Fourth Amendment standing inquiry because it requires defendants to demonstrate a privacy interest in a searched place before seeking relief under the Fourth Amendment.  *See Montalvo-Flores*, 81 F.4th at 342 & n.4.  However, this inquiry is not jurisdictional and should not be confused with Article III standing.  *Id.* at n.4.

5

reasonable expectation of privacy in their rooms after checkout time if they have not taken some affirmative action to check out. However, the many circuits to have confronted the issue unanimously hold that the expectation lapses after checkout time. *See, e.g., United States v. Parizo*, 514 F.2d 52, 55 (2d Cir. 1975); *United States v. Jackson*, 585 F.2d 653, 658 (4th Cir. 1978); *United States v. Ramirez*, 810 F.2d 1338, 1341 (5th Cir. 1987); *United States v. Lanier*, 636 F.3d 228, 232 (6th Cir. 2011); *United States v. Akin*, 562 F.2d 459, 464 (7th Cir. 1977); *United States v. Larson*, 760 F.2d 852, 855 (8th Cir. 1985); *United States v. Dorais*, 241 F.3d 1124, 1128–30 (9th Cir. 2001); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970); *United States v. Ross*, 964 F.3d 1034, 1043 (11th Cir. 2020).

That rule makes sense. Checkout time is an appropriate marker for the end of a guest's possession of a room and the resumption of possession by the hotel. Once checkout time has passed, hotel staff may—indeed, must—enter a room to clean it and prepare it for the next guest, who might be arriving just a short time later.[2] Leftover items can be removed by a hotel after checkout time. Keycards can be deactivated, terminating the guest's access to the room. And many hotels, like the one here, do not require guests to check out affirmatively at the front desk; instead, they simply charge the credit card on file

---

[2] That hotel staff may enter a room to maintain it during a guest's stay does not defeat the guest's reasonable expectation of privacy from police intrusion. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951). But hotel staff acquire complete discretion to enter the room after checkout time—for example, they may reasonably ignore a "Do Not Disturb" doorhanger left by a guest after checkout. *See Ross*, 964 F.3d at 1043.

after checkout time. Accordingly, guests can lose their privacy interests in a hotel room even without taking affirmative action to check out.

To argue otherwise, Mendoza points to testimony from the hotel manager that "people come in and they think they have the room for 24 hours." App. 71. On the basis of this testimony, Mendoza contends it was objectively reasonable for him to believe he had the room for a full 48 hours after checking in for a two-night stay. That argument fails. As a matter of societal expectation, most hotel guests understand that the checkout time is a fixed time of day that does not change based on the time they checked in. Travelers receive this information in many ways, including signage, receipts, and the typical check-in colloquy at the front desk. Here, the manager testified that the hotel had signs about the checkout time posted in multiple locations. And Mendoza himself received a receipt stating that his departure date was February 25, not February 26 as it would have been if he had the room for 48 hours.

Because this search happened five hours after checkout time, and there were neither communications between Mendoza and the hotel regarding a late checkout nor any other potentially ambiguous circumstances, it does not raise a close question. A future case nonetheless might. Does the reasonable expectation of privacy disappear immediately at checkout time, or might there be a "grace period" for stragglers who remain slightly overtime? If there should be a grace period, does it vary based on the patterns and practices at that particular hotel, or the hotel's communications with that particular guest? Circuits disagree on these questions, and we need not weigh in here. *Compare United States v. Kitchens*, 114 F.3d 29, 32 (4th Cir. 1997) (allowing guest to retain

7

legitimate expectation of privacy after checkout time if hotel has pattern or practice that would make the expectation reasonable), *and Lanier*, 636 F.3d at 232 (same), *and Dorais*, 241 F.3d at 1129 (same), *and United States v. Owens*, 782 F.2d 146, 150 (10th Cir. 1986) (same), *with Ross*, 964 F.3d at 1043 n.6 (expressly rejecting such an exception in favor of "clear Fourth Amendment rules").

Instead, it is sufficient to say that any subjective expectation of privacy Mendoza had in a hotel room five hours after checkout time was not one that society is prepared to recognize as reasonable. Lacking objective reasonableness, his expectation of privacy cannot support a Fourth Amendment claim.

*        *        *        *        *

To demonstrate that a search violated his rights under the Fourth Amendment, Mendoza must first show that the place searched was one in which he maintained a legitimate expectation of privacy. An expectation of privacy is legitimate only if it is objectively reasonable. Mendoza's expectation of privacy in his former hotel room, five hours after checkout time, was not. As such, the police's search of that room did not violate his Fourth Amendment rights.

We therefore affirm the District Court's denial of the motion to suppress.

8